DECISION
In this original action, relator, Robert L. Springfield, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for temporary total disability ("TTD") and to issue an order granting said compensation.
Pursuant to Civ.R. 53(C) and Loc.R. 12, Section (M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that a limited writ issue requiring the commission to vacate the order denying temporary total disability insofar as it was denied on the basis of voluntary abandonment of employment and to issue a new order, considering payment of TTD compensation based upon evidence in the file. (Magistrate's Decision, Appendix A.) Respondent-employer raises several objections to the magistrate's decision; however, these objections essentially reargue the points already raised in the briefs and addressed by the magistrate in her decision. As such, these issues will not be readdressed here and therefore respondent-employer's objections will be overruled.
Relator suffered an industrial injury on February 20, 2001, involving a crushing hand injury. The tips of two fingers were amputated. On the following day, a doctor recommended surgery to treat the wounds and pad the stumps. Prior to the injury, in August 2000, relator signed and acknowledged receipt of his employer's Associate Handbook, which included the following provision under the heading "Drug Free Workplace Policy:"
 It is the policy of the company to maintain a safe, productive and lawful workplace that is free from the costs and hazards caused by drug and alcohol abuse.
 The company strongly encourages associates with a drug or alcohol abuse problem to seek treatment and rehabilitation through the Employee Assistance Program (EAP). Associates who contact the EAP for assistance are assured complete privacy and confidentiality, except as required by law for reporting child abuse and other circumstances deemed potentially life threatening.
 Management should assure associates that their job security and promotional opportunities would not be jeopardized by their request for diagnosis or treatment.
 A detailed policy, which spells out all testing requirements for applicants and associates, as well as timely participation in Employee Assistance Programs, will be provided to each individual associate. Failure to comply with the Drug Free Workplace Policy may result in discipline, including termination. [Emphasis added.]
It is pertinent to note that evidence submitted to this court does not include a copy of the employer's "detailed policy which spells out all testing requirements." A urine specimen was collected from claimant and on February 24, 2001 a drug analysis showed the presence of marijuana metabolite in claimant's urine. The employer then terminated relator due to his violation of the drug free workplace policy.
A district hearing officer allowed relator's claim and concluded there was insufficient evidence to establish that the industrial injury was caused by drug induced impairment. After an appeal by respondent-employer, a staff hearing officer, while affirming the allowance of the claim for several conditions, determined relator was not eligible for TTD compensation. In pertinent part, the staff hearing officer concluded:
 Temporary total disability is DENIED in the captioned claim for the reason that the injured worker abandoned his employment with the employer by violating its drug free work place policy.
 Copies of the policy and the injured workers' signed acknowledgement are on file with the Commission.
 The parties stipulate that the injured worker was administered Morphine at the emergency room and that testing positive for opiates is immaterial to the issue.
 The injured worker, however, tested positive for Marijuana metabolities [sic] as verified by the Clinical Reference Laboratory Report of 02/24/2001 and certified by Michael T. Kelley, M.D. See also the 06/20/2001 letter of Paul C. Martin, M.D.
 The injured worker tested positive for 149 nanograms per milliliter: a value unlikely to be an error or false positive reading.
 This standard of proof in workers' compensation claims is within a reasonable medical probability and a preponderance of the evidence. Employer's drug screen and medical opinions meet both tests.
 The injured worker has submitted no contrary medical evidence.
As correctly alluded to by the magistrate, the issue before the court is whether the commission abused its discretion in denying TTD compensation. More specifically, the issue has become one of whether to recognize, upon allowing the claim, whether under State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, relator's conduct was tantamount to a voluntary abandonment of employment thereby precluding his eligibility for TTD compensation.
As stated by the magistrate in her decision, the Louisiana-Pacific case sets forth various requirements before a discharge can be determined a voluntary relinquishment of employment where the worker has violated a written work rule. These requirements include: (1) a work rule or policy clearly defining the prohibited conduct; (2) there should be identification of a violation as a dischargeable offense; and (3) there should be some showing that the rules and consequences of violating the rule were known or should have been known to the worker.
As opposed to the general requirement upon consideration of the allowance of a claim where there must be some establishment of a causal relationship between work activity and injury, the issue with respect to the application of the mandates of Louisiana-Pacific centers on the issue of causation of wage loss.
As properly concluded by the magistrate, there must be some showing of a worker's voluntary and knowing choice to accept the consequences of his or her action that would be directly in violation of company policy for the consequence of such violation to result in the denial of compensation. It is clear that the Louisiana-Pacific case compels the observation that any written work rule in the area of drug policy and the consequences for violating such policy must "clearly delineate" the prohibited conduct and its consequences. The magistrate concluded that in the instance case, there was no written work rule that clearly defined the prohibited conduct of having marijuana metabolites in ones' bodily fluid while at work. Although the policy states that the workplace must be free of drugs, that statement in itself does not identify the specific requirements of the policy of the company, nor does it clearly indicate the consequences for the violations of such policy.
Respondent-employer argues that claimant should know that a urine test would be utilized following an industrial injury and that if the urine tested positive, there could be a discharge. However, the rule as literally viewed, does not substantiate this conclusion. We recognize that respondent-employer has filed objections to the magistrate's decision; however, the objections generally reiterate matters already addressed in the briefs.
Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law thereto. As previously indicated, respondent-employer's objections to the decision of the magistrate are overruled. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the decision of the magistrate, this court will issue a limited writ of mandamus ordering respondent-commission to vacate the order of the staff hearing officer insofar as it denied TTD compensation on the basis of voluntary abandonment of employment and to further consider the payment of TTD compensation based upon the evidence of record.
Objections overruled; limited writ of mandamus granted.
TYACK, P.J., and LAZARUS, J., concur.
 APPENDIX A IN MANDAMUS
Relator, Robert L. Springfield, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for temporary total disability ("TTD") and to issue an order that grants compensation.
Findings of Fact:
1. In August 2000, Robert L. Springfield ("claimant") was employed by Sears Logistic Services, Inc ("Sears"). He signed an acknowledgement of receipt of his employer's Associate Handbook.
2. The handbook included the following:
Drug-free Workplace Policy
 It is the policy of the company to maintain a safe, productive and lawful workplace that is free from the costs and hazards caused by drug and alcohol abuse.
 The company strongly encourages associates with a drug or alcohol abuse problem to seek treatment and rehabilitation through the Employee Assistance Program (EAP). Associates who contact the EAP for assistance are assured complete privacy and confidentiality, except as required by law for reporting child abuse and other circumstances deemed potentially life threatening.
 Management should assure associates that their job security and promotional opportunities would not be jeopardized by their request for diagnosis or treatment.
 A detailed policy, which spells out all testing requirements for applicants and associates, as well as timely participation in Employee Assistance Programs, will be provided to each individual associate. Failure to comply with the Drug Free Workplace Policy may result in discipline, including termination. [Emphasis added.]
3. The evidence submitted to this court does not include a copy of the employer's "detailed policy, which spells out all testing requirements."
4. On February 20, 2001, claimant sustained a crushing injury to his hand while at work. He was taken to a hospital, and the tips of two fingers were amputated.
5. On February 21, 2001, Joseph Minarchek, M.D. recommended surgery to treat the wounds and pad the stumps, and he certified TTD.
6. A urine specimen was collected from claimant. On February 24, 2001, a drug analysis showed the presence of marijuana metabolite in claimant's urine.
7. The employer terminated claimant's employment due to his violation of the drug-free workplace policy.
8. In May 2001, a hearing was held before a district hearing officer ("DHO") on the issue of whether the workers' compensation claim should be allowed for an occupational injury. The DHO noted the results of the drug screen but concluded that there was insufficient evidence to establish that the accident was caused by drug-induced impairment. Accordingly, the DHO allowed the claim for conditions of the right hand.
9. The employer appealed. In June 2001, a hearing was held before a staff hearing officer ("SHO"). The issue for determination, as listed in the order, was: "Injury or Occupational Disease Allowance." The SHO affirmed, allowing the claim for several conditions. The SHO also determined, however, that claimant was not eligible for TTD:
 * * * His claim is ALLOWED for CRUSH INJURY TO RIGHT INDEX and MIDDLE FINGERS with FINGERTIP LACERATIONS * * *.
 Temporary total disability is DENIED in the captioned claim for the reason that the injured worker abandoned his employment with the employer by violating its drug free work place policy.
 Copies of the policy and the injured worker's signed acknowledgement are on file with the Commission.
 The parties stipulate that the injured worker was administered Morphine at the emergency room and that testing positive for opiates is immaterial to the issue.
 The injured worker, however, tested positive for Marijuana metabolities as verified by the Clinical Reference Laboratory Report of 02/24/2001 and certified by Michael T. Kelley, M.D. See also the 06/20/2001 letter of Paul C. Martin, M.D.
 The injured worker tested positive for 149 nanograms per milliliter: a value unlikely to be an error or false positive reading.
 This standard of proof in workers' compensation claims is within a reasonable medical probability and a preponderance of the evidence. Employer's drug screen and medical opinions meet both tests.
 The injured worker has submitted no contrary medical evidence.
10. The commission refused further appeal.
Conclusions of Law:
The issue before the court is whether the commission abused its discretion in denying TTD compensation. For the reasons explained below, the magistrate concludes that it did and that a writ should issue.
In the DHO order, the issue before the commission was identified as whether the claim should be allowed, and the DHO concluded that the injuries to the right hand were sustained in the course of and arising out of his employment. The DHO found no evidence to prove that the injury was caused by drug use and accordingly allowed the claim for an occupational injury. On appeal, the issue was whether to allow the claim, but the SHO proceeded to address a separate issue — whether, under State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, the claimant's conduct was tantamount to a voluntary abandonment of the employment at Sears.
At oral argument in this action, the magistrate asked whether there was evidence that claimant was placed on notice that the issue of TTD and voluntary abandonment of employment would be determined at the subject hearing. Counsel for claimant stated that, to the extent that the issue was not waived during the administrative proceedings, claimant waived that issue now. The magistrate accepts the waiver and accordingly proceeds to address whether the commission abused its discretion in concluding that claimant voluntarily abandoned his employment.
In Louisiana-Pacific, the court ruled that a discharge can constitute a voluntary relinquishment of employment where the worker has violated a written work rule and where the work rule or policy (1) clearly defined the prohibited conduct, (2) identified the violation as a dischargeable offense, and (3) was known to the worker or should have been known to him. Id.; see, also, State ex rel. Pretty Products, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5 (reaffirming that conduct is not "voluntary" when causally related to the industrial injury).
The courts have addressed questions of abandonment of employment in circumstances involving drug screens of injured workers. See State ex rel. Cobb v. Indus. Comm. (2000), 88 Ohio St.3d 54; State ex rel. Brandgard v. Indus. Comm. (Jan 11, 2001), Franklin App. No. 00AP-518, unreported (Memorandum Decision); State ex rel. Kincer v. Wal-Mart Stores, Inc. (Nov. 30, 1999), Franklin App. No. 98AP-1492, unreported (Memorandum Decision); State ex rel. Kitts v. Mancan, Inc. (Sept. 30, 1999), Franklin App. No. 98AP-1281, unreported (Memorandum Decision); State ex rel. Hisle v. Indus. Comm. (Dec. 28, 1999), Franklin App. No. 98AP-1490, unreported (Memorandum Decision).
In a hearing to determine whether to allow a claim for an occupational injury, the issue is causation of the injury. The commission must decide whether the proximate cause of the injury was "the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician." R.C. 4123.54(B). In contrast, under Louisiana-Pacific, the issue is causation of wage loss. The question is whether the employee voluntarily engaged in conduct knowing that he could lose his job as a result, essentially showing a willingness to lose wages. Thus, the cause of the loss of wages is claimant's voluntary choice to accept the known consequences of his actions. Consequently, the court made clear in Louisiana-Pacific that the written rule must "clearly delineate" the prohibited conduct and its consequences, or we cannot infer from the worker's conduct his acceptance of the consequences. See, also, State ex rel. McKnabb v. Indus. Comm. (2001), 92 Ohio St. 559.
In the present action, however, there is no written rule that clearly defines the prohibited conduct of having marijuana metabolite in one's body fluid while at work. Although the policy states clearly that the workplace must be free of drugs, that statement is subject to broad interpretation. For example, the policy could mean that, in order to keep the workplace free of drugs, no one may bring drugs into the workplace or use an illegal drug while in the workplace, or be under the influence of illegal drugs while working — and that violators will be discharged.
Sears argues that the rule clearly indicates that, if an employee uses drugs at any time or at any place — regardless of whether he is under the influence of drugs while in the workplace and regardless of whether he possesses drugs in the workplace — he can be discharged. Sears argues that its employees knew or should have known that their urine would be tested following an industrial injury and that, if the urine tested positive for marijuana metabolite, they would be discharged. However, the face of the rule simply does not convey that information. The rule does not give a worker clear notice that he cannot have the metabolite in his system and that he will be tested if he sustains an industrial injury.
The rule states generally that the workplace must be free of drugs and advises that details "will be provided," but there is no evidence in the record showing the content of those details or whether they were known by claimant or should have been. Cf. Brangard, Kitts, Cobb, Hisle, supra. In sum, the magistrate concludes that the commission's order is not supported by "some evidence" that the employer had a written rule or policy that clearly delineated the prohibited conduct.
This conclusion does not mean that employers cannot impose rules regarding use of illegal drugs away from its premises or during nonworking hours. See, generally, Hisle, Brangard, supra. The issue under Louisiana-Pacific is not whether an employer can discharge a worker for engaging in conduct the employer deplores or whether the worker has engaged in conduct deserving of censure. The issue in regard to abandonment of employment is whether the worker has in effect resigned his job by engaging in certain conduct.
Based on the foregoing, the magistrate concludes that the court should grant a writ returning this matter to the commission to vacate the order of the SHO insofar as it denied TTD on the basis of voluntary abandonment of employment.