DECISION
 ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} Relator, Phillips Companies, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order awarding temporary total disability compensation to respondent, Warren J. Bond, Sr. ("claimant"), and to enter an order denying said compensation on grounds that claimant voluntarily abandoned his employment with relator.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate determined that the issue "is whether the commission abused its discretion in finding that relator had failed to prove that the `Work Schedule' policy was in force on the date of injury. Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus * * *." (Magistrate's Decision, ¶ 29.)
 {¶ 3} Relator has filed the following objections to the magistrate's decision:
A. The Magistrate failed to properly address Phillips' position as he failed to address whether the claimant voluntarily abandoned his position of employment under State ex rel. Louisiana-Pacific Corp. v. Indus.Comm. (1995), 72 Ohio St.3d 401.
B. The Magistrate failed to address whether the claimant's departure from employment precluded temporary total disability compensation underState ex rel. Daniels v. Indus. Comm. (2003), 99 Ohio St.3d 282.
C. The Magistrate incorrectly concluded that Phillips failed to establish that Phillips' written "Work Schedule" policy was contained within the employee manual.
Because relator's objections are interrelated, we address them jointly. In them, relator continues to assert that claimant voluntarily abandoned his employment.
 {¶ 4} Under State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401 and State ex rel. McKnabb v. Indus. Comm.
(2001), 92 Ohio St.3d 559, an employer seeking to establish that a claimant's termination of employment was voluntary has "the burden of producing a written policy applicable to claimant's termination." (Magistrate's Decision, ¶ 27.) While relator suggests it met that burden here, the magistrate properly concluded that the joint stipulation of evidence fails to demonstrate relator's compliance with the requirement of Louisiana-Pacific that the claimant's violation be of a written work rule or policy in effect on the date of the claimant's injury.
 {¶ 5} As the magistrate explained, relator's attempt to meet the burden of proving a written policy by submitting Exhibit H, a copy of the "work schedule," is insufficient: nothing in the record indicates it was in effect on the day of claimant's injury. While relator's objections point to other exhibits in the stipulated evidence, they, too, fall short of proving a written policy existed at the time of the incident. Specifically, Exhibit E indicates that claimant was aware of the termination procedure because the policy was passed out to all employees, but the exhibit does not indicate that such was true before claimant's injury. Similarly, Exhibit D states that claimant was aware of the termination policy, but it too fails to indicate either the date on which claimant was made aware of it or that the policy was a written rule. As the magistrate concluded, "[i]t was well within the commission's fact-finding discretion, based upon the limited evidence before it, to determine that relator had failed to produce a written policy applicable to claimant's employment termination." (Magistrate's Decision, ¶ 39.)
 {¶ 6} Failing to meet the test of Louisiana-Pacific to demonstrate claimant's voluntary abandonment of his employment, relator relies onState ex rel. Daniels v. Indus. Comm., 99 Ohio St.3d 282, 2003-Ohio-3626. Contrary to relator's contentions, that case also appliedLouisiana-Pacific, but found Louisiana-Pacific was satisfied. Here, relator fails to satisfy Louisiana-Pacific, rendering Daniels
inapplicable.
 {¶ 7} Because the magistrate properly addressed relator's position under Louisiana-Pacific, we overrule relator's objections.
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
 writ denied.
Sadler and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Phillips Companies,:
Relator,
:
v.: No. 04AP-222
The Industrial Commission of Ohio: (REGULAR CALENDAR)
and Warren J. Bond, Sr.,
:
Respondents.
:
 MAGISTRATE'S DECISION Rendered on October 22, 2004 Dunlevey, Mahan Furry, and Gary W. Auman, for relator.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
James R. Nein Law Offices, and Brian Harter, for respondent Warren J. Bond, Sr.
 IN MANDAMUS {¶ 9} In this original action, relator, Phillips Companies, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent Warren J. Bond, Sr. ("claimant"), and to enter an order denying said compensation on grounds that claimant voluntarily abandoned his employment with relator.
Findings of Fact:
 {¶ 10} 1. On December 12, 2002, claimant sustained an industrial injury while employed with relator, a state-fund employer. The industrial claim is allowed for "sprain lumbar region" and is assigned claim number 02-472689.
 {¶ 11} 2. On June 24, 2003, claimant filed a request for TTD compensation supported by a C-84 completed by Rajendra Patel, M.D. On the C-84, Dr. Patel certified a period of temporary total disability from June 12, 2003 to an estimated return-to-work date of July 12, 2003.
 {¶ 12} 3. Following a July 25, 2003 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation beginning June 12, 2003. The DHO's order states in part:
The District Hearing Officer further finds the employer has not established its burden of proving the affirmative defense of job abandonment. Although the injured worker was apparently terminated from Phillips Companies on 12/23/2003 due to three consecutive days of no call/no show, there is no written work rule on file which prohibits and identifies as dischargeable this "conduct". As such, the criteria underLouisiana Pacific [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401] have not been met to establish that the injured worker's termination amounts to a voluntary abandonment of his employment so as to preclude a subsequent claim for temporary total compensation.
 {¶ 13} 4. Relator administratively appealed the DHO's order of July 25, 2003. Following a November 25, 2003 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states in part:
The Staff Hearing Officer affirms the finding of the District Hearing Officer that the employer has not established its burden of proving the affirmative defense of job abandonment. Although the injured worker was apparently terminated from Phillips companies on 12/23/2003 [sic] due to three consecutive days of no call/no show, there is no written work rule on file which prohibits and identifies as dischargeable this "conduct". At the Staff Hearing Officer hearing, the employer submitted a form entitled "Work Schedule". It was not clear to the Staff Hearing Officer whether this "Work Schedule" was available at the District Hearing Officer hearing level. At any rate, the policy is undated, so that the Staff Hearing Officer could not tell whether this "Work Schedule" policy was in force on the date of injury, 12/12/2002. For that reason, the Staff Hearing Officer also finds that the criteria under LouisianaPacific have not been met to establish that the injured worker's termination amounts to a voluntary abandonment of his employment so as to preclude a subsequent claim for temporary total disability compensation.
 {¶ 14} 5. On January 3, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 25, 2003.
 {¶ 15} 6. On March 2, 2004, relator, Phillips Companies, filed this mandamus action.
 {¶ 16} 7. On May 11, 2004, the parties filed a joint stipulation of evidence ("JSE") that was prepared by relator's counsel. The JSE contains 21 exhibits labeled A through U. The JSE also contains a table of contents that identifies and describes each exhibit. The table of contents of the JSE lists exhibits G and H as follows: "G. Relator's Employee Manual Cover Page dated March 2002. H. Relator's Work Schedule Policy."
 {¶ 17} Exhibit G contained within the JSE is a single page stating in its entirety: "Phillips Sand Gravel and Phillips Ready Mix Employee Manual March 2002."
 {¶ 18} Exhibit H contained within the JSE is a single page containing the heading "Work Schedule." Under the subheading "Absence or Lateness" appears the following language: "Absence from work for three (3) consecutive days without notifying your manager or the personnel administrator will be considered a voluntary resignation." The number "25" is found centered at the bottom of exhibit H. However, exhibit H itself contains no date indicating when it was published.
 {¶ 19} Exhibit N of the JSE is an affidavit executed August 21, 2003 by Jason Phillips, relator's assistant vice president. According to the affidavit, Jason Phillips was claimant's supervisor prior to and following his industrial injury. The Phillips affidavit states in part:
The company maintains a personnel policy that requires employees to notify the company of any unexpected absence or late arrival. They are to call the company and ask for their manager. Absence from work for three consecutive days without notifying the employee's manager or personnel administrator I considered a voluntary resignation.
 {¶ 20} Exhibit D of the JSE is a two-page form of the Ohio Department of Job and Family Services ("ODJFS") captioned "Request to Employer for Separation Information." Exhibit D purports to have been completed on June 26, 2003 by the "comptroller" of Phillips Companies. Relator's comptroller provided information regarding Warren J. Bond.
 {¶ 21} On the form, relator's comptroller indicates that claimant was "discharged." In response to the query "Did claimant violate a company rule or policy?" relator's comptroller placed a checkmark in the "Yes" box.
 {¶ 22} In response to the query "Indicate rule or policy violated," relator's comptroller wrote "no show no call 3 days equals termination."
 {¶ 23} In response to the query "Was claimant aware of rule or policy and was it uniformly applied to all employees?" relator's comptroller placed a checkmark in the "Yes" box.
Conclusions of Law:
 {¶ 24} A voluntary abandonment of the former position of employment precludes TTD compensation. State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44. However, an injury-induced abandonment of employment is not considered voluntary and thus does not preclude TTD compensation. Id.
 {¶ 25} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, 403, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
* * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft [State ex rel.Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42] and Watts [State exrel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118] —i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 26} In State ex rel. McKnabb v. Indus. Comm.
(2001), 92 Ohio St.3d 559, 561, the court further explained its decision in Louisiana-Pacific, stating:
Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizingLouisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.
 {¶ 27} Thus, under Louisiana-Pacific and McKnabb, in order to establish that claimant's termination of employment was voluntary, relator had the burden of producing a written policy applicable to claimant's termination. Relator attempted to meet this burden by submitting a copy of the "Work Schedule" sheet identified in the JSE as exhibit H.
 {¶ 28} The commission determined that relator had not established its burden of proving the affirmative defense of job abandonment on grounds that the commission could not tell whether the "Work Schedule" policy was in force on the date of injury. The commission found the policy to be "undated."
 {¶ 29} The issue here is whether the commission abused its discretion in finding that relator had failed to prove that the "Work Schedule" policy was in force on the date of injury. Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 30} In the magistrate's view, the evidence presented to this court through the JSE filed in this action leaves some doubt as to whether exhibit H was contained in relator's employee manual as of March 2002, the date appearing on the so-called cover sheet of the employee manual.
 {¶ 31} In its brief filed in this action, relator asserts, at 14-15:
* * * The record before the SHO clearly demonstrates that Phillips had the policy, violated by Respondent, contained within its company "Employee Manual." * * * The Employee Manual is dated March 2002. * * *
* * *
* * * This policy is contained within Phillips's Employee Manual which was issued nine (9) months before the subject employment action. * * *
 {¶ 32} In its reply brief, relator emphatically asserts that the commission's determination is premised upon a clear mistake of fact. Relator asserts:
* * * Phillips' "Work Schedule" is contained within Phillips Sand Gravel and Phillips Ready Mix Employee Manual, March 2002. * * * Clearly, this policy was dated, and was in place prior to, and at the time of, Respondent Bond's injury. * * *
(Id. at 3; emphasis sic.)
 {¶ 33} Relator's repeated assertions in this action as to the status of the evidence before this court does not make it so.
 {¶ 34} Analysis begins with the observation that the JSE, which was prepared by relator's counsel, presents as separate exhibits, the dated cover page of the employee manual and the undated "Work Schedule" sheet. That exhibit H immediately follows exhibit G in the JSE does not, by itself, indicate that the exhibits are parts of the same document or that exhibit H was contained in the employee manual as of March 2002.
 {¶ 35} The affidavit of Jason Phillips fails to assist relator in establishing that the "Work Schedule" sheet was contained in the employee manual as of March 2002. In his affidavit, Jason Phillips states that the company maintains a personnel policy regarding absences from work. Phillips states that unexcused absence from work for three consecutive days is considered by him to be a voluntary resignation. Phillips does not indicate that he knows when the "Work Schedule" document was issued or that it was contained within the employee handbook as of March 2002.
 {¶ 36} Likewise, the comptroller's responses to the queries on the ODJFS form fail to assist relator in establishing that the "Work Schedule" sheet was contained in the employee manual as of March 2002. While relator's comptroller states his belief that claimant was aware of a rule or policy regarding absenteeism, he does not proffer specific information regarding the publication of the "Work Schedule."
 {¶ 37} It is the commission that weighs the evidence before it. In the magistrate's view, the commission was not required to assume that the "Work Schedule" sheet was contained in the employee manual as of March 2002, nor was the commission required to draw that inference from the evidence before it.
 {¶ 38} Relator had the burden of proof before the commission on the affirmative defense of voluntary abandonment. Relator also has the burden of proof in this mandamus action. If, in fact, the "Work Schedule" sheet was contained in the employee manual as of March 2002 as relator asserts here, relator could have easily established that fact before the commission by submitting an affidavit or testimony from an appropriate company official with knowledge of the company's publication of its employee handbook.
 {¶ 39} It was well within the commission's fact-finding discretion, based upon the limited evidence before it, to determine that relator had failed to produce a written policy applicable to claimant's employment termination. {¶ 40} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.