[Cite as *State ex rel. Stallion Oilfield Constr., L.L.C. v. Indus. Comm.*, 2019-Ohio-3174.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Stallion Oilfield Construction, LLC, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-350 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on August 8, 2019

**On brief:** *Vorys, Sater, Seymour and Pease LLP,* and *Corrine S. Carman,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

**On brief:** *Heller, Maas, Moro & Magill Co., LPA, Richard L. Magill,* and *Robert J. Foley,* for respondent Roger W. Hutchison.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Stallion Oilfield Construction, LLC, ("Stallion") brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its March 2, 2018 corrected order granting respondent Roger W. Hutchinson's request for temporary total disability ("TTD"). Pursuant to the following analysis, we overrule Stallion's objections and adopt the magistrate's March 26, 2019 decision in its entirety and deny the requested writ of mandamus.

## I.  BACKGROUND

{¶ 2}   Stallion employed Hutchinson.  At the time of his hire, he acknowledged receipt of Stallion's Employee Handbook Drug and Alcohol Policy ("handbook") via a signed document dated January 16, 2014.  The handbook included the following relevant sections:

### 7.0 Testing

7.1 The Company reserves the right to test any employee * * * for drugs and alcohol * * *. Acceptance of testing is a mandatory condition of employment. * * *.

7.2 Refusal to cooperate in testing is a violation of this policy and will result in termination of employment. * * *.

7.3 Employees are tested in the following situations, unless prohibited by state law:

* * *

**Post-accident** – Employees are subject to drug and alcohol testing when the Company reasonably believes they may have caused or contributed to an accident resulting in damage to Company equipment, or injury to a person, or when an incident in which they were involved, though not resulting in such damage or injury, created a high potential for such damage or injury, as defined in the HSE Incident Reporting and Investigation Procedures' definition of major incident.

* * *

- Random – All employees are subject to random drug testing. * * *.
- The tests are unannounced, spread throughout the year, and the selection of employees is made by a scientifically valid method.

* * *

- **Periodic** – Employees may be subject to periodic drug testing when the testing is scheduled and announced in advance.

* * *

**11.0 Consequences**

11.1 *Any employee* * * * who engages in conduct in violation of this policy will be subject to disciplinary action up to, and including termination.

* * *

- *Employees* – if the results of a drug test are positive, the employee is terminated[.] * * *.

(Emphasis sic.) (App'x C of the Handbook at 8-11.)  The handbook's definition section describes a positive test for drugs as follows:

**Test positive for drugs** – to take a drug test that results in a concentration of amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine, methadone, opiates, phencyclidine, or propoxyphene, which exceeds the cutoff levels established by the government or other reasonable standards. These are subject to change by the U.S. government or applicable state law. Listed below are the more common names and drugs of the same family:

* * *

Opiates * * * Morphine, Codeine; Screen Level 2000(ng/ml); Confirm Level 2000 (ng/ml)

(Emphasis sic.) (App'x C of the Handbook at 13.)

{¶ 3} On March 19, 2017, Hutchinson suffered an accidental back injury while in the course of his employment with Stallion.  His physician released him to return to work with restrictions.  Before returning to work, Hutchinson applied for and received workers' compensation benefits for back strain.  Hutchinson subsequently returned to Stallion in a light-duty capacity.  On April 18, 2017, Stallion submitted Hutchinson to a random drug test.  Hutchinson was said to have tested "positive" for morphine, codeine, and opiates but no concentrations of each were provided in that result.  Stallion terminated Hutchinson's employment on April 28, 2017 because of his drug screen.

{¶ 4} Thereafter, Hutchinson filed a motion asking that his claim be additionally allowed for "intervertebral disc disorder with myelopathy" and subsequently filed an application for TTD compensation.  (May 3, 2017 Mot.)  Stallion opposed, arguing that

Hutchinson had voluntarily abandoned his employment when he tested positive for opiates.

{¶ 5} The district hearing officer ("DHO") denied Hutchinson's application for TTD because medical records "certifying disability based solely on the conditions currently allowed in the claim" were not present in the record. (Stipulation of the Evidence at 20968-A77.) The DHO did, however, grant his request for an additional allowance relative to disc extrusion. Both sides appealed.

{¶ 6} The staff hearing officer ("SHO") then held a hearing. During that proceeding, Hutchinson admitted to taking opiates that were prescribed for his daughter for her surgery one year before. The SHO's September 22, 2017 order affirmed the DHO's granting of the additional award. The SHO's order additionally reversed the DHO's denial of TTD because even if Hutchinson's termination equated to voluntary abandonment, TTD was still proper because Hutchinson could not return to work in his former position at the time he was fired.

{¶ 7} Stallion appealed that determination to the commission on two grounds. First, Stallion argued that the SHO incorrectly determined that Hutchinson had not voluntarily abandoned his position due to his positive drug test. Second, Stallion challenged Hutchinson's medical evidence. The commission's ultimate order affirmed the SHO as to both the additional allowance and the TTD award. The commission noted Stallion failed to establish the first requirement for voluntary abandonment under *State ex rel. Louisiana-Pacific v. Indus. Comm.*, 72 Ohio St.3d 401 (1995)—that is, Hutchinson was terminated for violating a rule that "clearly" defined the prohibited conduct. The commission found the handbook defined "positive drug test" to require the requisite drug concentration amounts necessary to equate to a positive result. Because Stallion's test results did not include the concentration of each opiate, the commission reasoned those same results "do not confirm, under [Stallion's] own policy and rules, that the test was positive and at a level supporting termination of employment." (Stipulation of the Evidence at 20968-B51.) Hence, the commission determined Stallion had not met its burden to show that Hutchinson voluntarily abandoned his employment so as to render TTD improper under *Louisiana-Pacific*. The commission also held that Hutchinson had presented sufficient medical evidence warranting his additional allowance for disc extrusion.

{¶ 8} Stallion moved for reconsideration. In its request, Stallion attached the missing opiate concentration level information from Hutchinson's drug test to its motion. Those results indicated Hutchinson's level of codeine was 4920 ng/ml and his level of morphine was 220 ng/ml. Thus, on these results only the codeine concentration would have exceeded the handbook's baseline levels; contrary to the initial report, the information put forward with regard to morphine would not have shown a "positive" test. The commission declined to reconsider, and Stallion's instant complaint for writ of mandamus followed.

{¶ 9} Therein, Stallion seeks an order requiring the commission to vacate its order and to enter a new order denying Hutchinson's TTD request. Alternatively, Stallion requests this court to remand the matter to the commission "for further proceedings in accordance with Ohio law." (Compl. at 10-11.)

{¶ 10} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who conducted a hearing and rendered a decision and recommendation that included findings of fact and conclusions of law, which is appended hereto. In sum, the magistrate determined the commission did not abuse its discretion when awarding TTD to Hutchinson because Stallion failed to produce proof of Hutchinson's drug concentration results as Stallion's own handbook required. As a result, the magistrate concluded that the writ should be denied.

{¶ 11} Stallion's objections to the magistrate's decision and the commission's response are presently before this court.

## II.   ANALYSIS

{¶ 12} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Stallion must show a clear legal right to the relief sought, and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).

{¶ 13} To satisfy that showing, Stallion asserts the magistrate omitted "key" facts which render the magistrate's legal conclusion "illogical." (Apr. 9, 2019 Objs. 5.) Stallion also objects to the magistrate's failure to address Stallion's second ground for reversal—

Hutchinson's allegedly insufficient medical evidence in support of his TTD award. Each contention will be addressed in order.

{¶ 14} Turning first to evidence omission, Stallion highlights the magistrate's failure to mention section 9 of the handbook. That "key policy," Stallion argues, establishes Stallion's drug testing procedure. That procedure directs that the employee's specimen is sent to an outside laboratory with results being reported to a medical review officer ("MRO") before Stallion learns the outcome. The MRO then notifies the employee of the results, and the employee has an opportunity to explain or rebut the results. Only after the employee has had a chance to address the positive finding does the MRO inform Stallion of the result. According to Stallion, section 9 establishes Stallion does not have and does not rely on quantitative results when addressing employee drug screens. Thus, Stallion argues the magistrate's failure to mention this policy, in combination with the omission of Hutchinson's drug test timeline, unfairly shifts the burden to Stallion to produce quantitative levels.

{¶ 15} We find no merit to this objection. Stallion's contention in this regard completely ignores that its own handbook defines "test positive for drugs" to require drug concentration levels greater than established levels. Its argument is therefore additionally confounding, because Stallion argues exclusion of section 9 is improper while simultaneously ignoring its own definition of "Test Positive for Drugs." Moreover, Stallion's section 9 argument is curious because Stallion essentially admits it does not follow its own handbook—that is, by not having quantitative results when faced with a positive employee drug test, Stallion cannot know whether the test satisfies its own levels to warrant termination. We also conclude that Stallion's reconsideration motion confirmed that the commission properly noted the necessity of having Hutchinson's drug concentration levels, as only his codeine level of 4920 ng/ml surpassed the 2000 ng/ml baseline for a "positive" drug test under the handbook. Hutchinson's morphine level of 220 ng/ml fell below that baseline, and thus apparently was not "positive" as defined by Stallion, despite Stallion's representations to the contrary. Stallion's production of those concentration amounts, coming only after the commission had issued its decision, is simply too late. Hence, we overrule this objection.

{¶ 16} Stallion next objects to the magistrate's failure to include that Hutchinson admitted to ingesting codeine and morphine, and Hutchinson also admitted his failure to

challenge the results. Stallion posits that information should be in the magistrate's decision, without elaboration as to why. The magistrate does state that Hutchinson's test showed evidence of the drugs, with no concentrations originally provided. Additionally, Hutchinson does not dispute that result. Thus, the absence of that information does not equate to error, and we overrule this objection.

{¶ 17} Stallion continues by attacking the magistrate's legal conclusions. Specifically, Stallion asserts the magistrate's failure to include the noted evidence renders the legal analysis "illogical." (Objs. at 5-6.) Our overruling the factual objections above necessitates our overruling this objection as well. Objection overruled.

{¶ 18} Lastly, Stallion argues the magistrate failed to consider its contention that Hutchinson failed to meet his "burden of proving that his loss of earnings was causally related to the allowed conditions of his workers' compensation claim." (Objs. at 2.) Stallion elaborates no further on this objection. "It is inappropriate for this court to construct the legal arguments in support of" Stallion's position. *State v. England*, 10th Dist. No. 05AP-793, 2006-Ohio-5087, ¶ 16. While we acknowledge the magistrate did not address Stallion's argument in this regard, we note that the commission did fully consider it. As a result, we overrule this objection.

{¶ 19} In conclusion, we agree with the magistrate's analysis of the relevant issues, and for the reasons set forth in the magistrate's decision and those additional reasons expressed herein, we overrule each of Stallion's objections and deny its request for a writ of mandamus.

## III. CONCLUSION

{¶ 20} Following our independent review of the record and the objections filed by Stallion, we find the magistrate has determined the pertinent facts and properly applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. For the reasons set forth in the magistrate's decision and those expressed herein, Stallion's objections are overruled, and the writ of mandamus is denied.

*Objections overruled; writ of mandamus denied.*

BRUNNER and NELSON, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Stallion Oilfield Construction, LLC, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  18AP-350 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S  DECISION

Rendered on March 26, 2019

*Vorys, Sater, Seymour and Pease LLP,* and *Corrine S. Carman,* for relator.

*Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

*Heller, Maas, Moro & Magill Co., LPA, Richard L. Magill,* and *Robert J. Foley,* for respondent Roger W. Hutchison.

IN MANDAMUS

{¶ 21} Relator, Stallion Oilfield Construction, LLC, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded temporary total disability ("TTD") compensation to respondent-claimant Roger W. Hutchinson, after finding that

relator's termination of claimant was not a bar to that compensation, and ordering the commission to deny claimant TTD compensation.

Findings of Fact:

{¶ 22} 1. Claimant sustained a work-related injury on March 19, 2017 and his workers' compensation claim was initially allowed for: "Sprain of ligaments of lumbar spine."

{¶ 23} 2. Relator administered a post-accident drug test and the results of that test were negative.

{¶ 24} 3. Claimant's treating physician released him to return to work with restrictions and relator was able to provide him with a modified-duty job.

{¶ 25} 4. On April 18, 2017, claimant was subjected to a random drug test which was authorized by his employee handbook. The results of that test were positive for codeine, morphine, and opiates. The only information noted on the drug test result certificate was a positive result (no concentrations were provided).

{¶ 26} 5. Relator had an employee handbook which claimant received January 16, 2014. The handbook provides the following relevant drug policy provisions:

> **7.0 Testing**
>
> 7.1 The Company reserves the right to test any employee * * * for drugs and alcohol. * * * Acceptance of testing is a mandatory condition of employment. * * *
>
> 7.2 Refusal to cooperate in testing is a violation of this policy and will result in termination of employment. * * *
>
> 7.3 Employees are tested in the following situations, unless prohibited by state law: * * *
>
> **Post-accident**- Employees are subject to drug and alcohol testing when the Company reasonably believes they may have caused or contributed to an accident resulting in damage to Company equipment, or injury to a person, or when an incident in which they were involved, though not resulting in such damage or injury, created a high potential for such damage or injury, as defined in the HSE Incident Reporting and Investigation Procedures' definition of major incident. * * *

- Random – All employees are subject to random drug testing. * * *
- The tests are unannounced, spread throughout the year, and the selection of employees is made by a scientifically valid method. * * *

- **Periodic**- Employees may be subject to periodic drug testing when the testing is scheduled and announced in advance.

* * *

11.0 Consequences

11.1 *Any employee* * * * who engages in conduct in violation of this policy will be subject to disciplinary action up to, and including termination.

* * *

- *Employees* – if the results of a drug test are positive, the employee is terminated.

(Emphasis sic.)

{¶ 27} 6. Under the definitions section, the handbook defines a positive test for drugs as follows:

> **Test positive for drugs** – to take a drug test that results in a concentration of amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine, methadone, opiates, phencyclidine, or propoxyphene, which exceeds the cutoff levels established by the government or other reasonable standards. These are subject to change by the U.S. government or applicable state law. Listed below are the more common names and drugs of the same family:
>
> * * *
>
> Opiates- * * * Morphine, Codeine; 2000(ng/ml); 2000 (ng/ml)

(Emphasis sic.)

{¶ 28} 7. Relator terminated claimant's employment as of April 28, 2017 as a result of the failed drug test.

{¶ 29}  8. On May 3, 2017, claimant filed a C-86 motion to have an additional low back condition added to his claim and subsequently filed an application for TTD compensation.

{¶ 30}  9. Following a hearing before a staff hearing officer ("SHO") on September 13, 2017, claimant's claim was additionally allowed for "Disc extrusion at L5-S1."  Thereafter, the SHO applied the rationale from *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, and awarded claimant TTD compensation because claimant was incapable of returning to work at his former position of employment at the time the termination occurred.

{¶ 31}  10. Relator filed an appeal to the full commission arguing that the SHO order contained a clear mistake of law, namely that claimant's violation of a written work rule resulted in his termination and precluded his receipt of TTD compensation.  Relator also challenged the medical evidence submitted by claimant.

{¶ 32}  11. The matter was heard before the commission on December 7, 2017.  In a corrected order necessitated by a clerical error, the commission allowed claimant's claim for the additional condition of disc extrusion at L5-S1, and awarded claimant TTD compensation from April 29 through May 18, 2017, from May 26 through July 31, 2017, and to continue upon submission of supporting medical evidence.  Thereafter, the commission rejected relator's argument that claimant voluntarily abandoned his employment specifically finding that relator failed to meet its burden of proof under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995).  The commission's order provides:

> The Commission rejects the defense that the Injured Worker voluntarily abandoned his employment with this Employer as of 04/28/2017. As noted above, the Injured Worker had returned to light duty work with this Employer. On 04/18/2017, the Injured Worker underwent a random drug test, as is permitted by provisions in the Employee Handbook. The Injured Worker had acknowledged receipt of the Drug and Alcohol Plan on 01/16/2014. The Drug Test Result Certificate came back as "positive" for codeine, morphine and opiates, but the specific level of the drug or drugs found was not given. The Injured Worker's employment was terminated 04/28/2017.

> Under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 650 N.E.2d 469 (1995), the first criteria for finding a "voluntary abandonment" such as would support the denial of payment of temporary total disability compensation, is a showing the Injured Worker was terminated for violating a written work rule which clearly defined the prohibited conduct. The Employee Handbook, at pages 36 and 37, defines a "positive drug test" and lists the concentration levels of various drugs necessary for finding a positive test result. The results on file from the Injured Worker's 04/18/2017 blood test do not list the concentration levels and thus do not confirm, under the Employer's own policy and rules, that the test was positive and at a level supporting a termination of employment. On these facts, the Commission finds the Employer has not met the requirements for showing the Injured Worker voluntarily abandoned his employment, and payment of temporary total disability compensation is appropriate.

{¶ 33} 12. Relator filed a request for reconsideration. At that time, relator submitted the quantitative results of claimant's drug test. Specifically, those results provided: "Codeine 4920 ng/mL; Morphine 220 ng/mL."

{¶ 34} 13. In an order mailed March 2, 2018, relator's request for reconsideration was denied.

{¶ 35} 14. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 36} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion in awarding TTD compensation to claimant, and this court should deny relator's request for a writ of mandamus.

{¶ 37} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of

mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 39} Under *Louisiana Pacific Corp.*, an employee may be found to have voluntarily abandoned the workplace by violating a written work rule or policy that (1) clearly defined the prohibited conduct, (2) was previously identified by the employer as a dischargeable offense, and (3) was known or should have been known by the employee. Here, relator had a written drug policy and claimant acknowledged that he had both received and read the policy.

{¶ 40} Pursuant to relator's drug policy, if, following a drug test, the results are positive, the employee will be terminated. The handbook further defines what constitutes a positive drug test. A positive drug test for opiates, which includes codeine and morphine, is:

> **Test positive for drugs –** to take a drug test that results in a concentration of amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine, methadone, opiates, phencyclidine, or propoxyphene, which exceeds the cutoff levels established by the government or other reasonable standards. These are subject to change by the U.S. government or applicable state law. Listed below are the more common names and drugs of the same family:
>
> Opiates- * * * Morphine, Codeine; 2000(ng/ml); 2000 (ng/ml)

(Emphasis sic.)

{¶ 41} In finding that relator did not meet its burden of proving that claimant's violation of a written work rule resulted in his termination and his ineligibility for TTD compensation, the commission specifically noted that the evidence which relator submitted in support did not indicate the concentration of drugs found in claimant's system. Because it was impossible to determine what the concentration of those drugs was in claimant's

system, the commission determined that relator had failed to meet its burden of proof.  It was not until relator filed its request for reconsideration that relator submitted evidence of the concentration of drugs found in claimant's system.

{¶ 42} At oral argument, counsel for relator argued that the commission was requiring them to prove an additional element and that they are not required to submit the quantitative results.  Counsel stated that the toxicologist's report that the test was positive was sufficient.

{¶ 43} Ordinarily, relator's argument would be correct.  However, here the commission did not impose an additional requirement on relator.  Instead, relator, through its handbook, imposed that requirement on itself.  By qualitatively defining the concentrations necessary to constitute a positive test result, relator was required to submit that proof.

{¶ 44} Based on relator's failure to establish that the claimant's positive drug test had the appropriate concentration of drugs in claimant's system, the commission did not abuse its discretion in finding that relator had not met its burden of proof.

{¶ 45} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in finding that claimant's termination did not render him ineligible for TTD compensation, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).