[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 401.]

THE STATE EX REL. LOUISIANA-PACIFIC CORPORATION, APPELLANT, *v.*

INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 1995-Ohio-153.]

*Workers' compensation—Voluntary departure from employment precludes temporary total disability compensation—Termination is voluntary when it is generated by claimant's violation of a written work rule that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee.*

(No. 93-2545—Submitted April 4, 1995—Decided June 28,1995.)

APPEAL from the Court of Appeals for Franklin County, No. 92AP-1279.

———————————

{¶ 1} Appellee-claimant, Patrick Longmore, injured his back while in the course of and arising from his employment with appellant Louisiana-Pacific-Corporation ("L-P") on October 3, 1989. L-P, a self-insured employer, began paying temporary total disability compensation based on reports from Dr. Francis M. Turocy, attending physician.

{¶ 2} The record contains two pertinent C-84s, "Physician's Report Supplemental," from Dr. Turocy. The reports, dated December 11, 1990 and December 16, 1990, respectively, list the date of last examination as December 10, 1990, and both list claimant's "actual date" of release to return to his former job as December 17, 1990.

{¶ 3} The record indicates that claimant did not report to work or call in on December 17, 18 or 19, 1990. By letter dated December 20, 1990, L-P informed claimant:

"We have received a letter from your attending physician stating you have been released for work December 17, 1990 for full-time status. As you are aware from your Louisiana-Pacific Corporation handbook, failure to report to work for three (3) consecutive days is an automatic termination. We, at Louisiana-Pacific Corporation Boardman Plant, have not heard from you. Result: Termination as of 12-20-90."

{¶ 4} The record indicates that claimant did not contact L-P for another two weeks. A memorandum from appellant, which is dated January 2, 1991 and which claimant does not dispute, indicates that claimant contacted the plant manager on that date and stated "that there was a misunderstanding when he got released by his doctor and that his doctor was supposed to call and report him off." His dismissal remained intact.

{¶ 5} Claimant later moved appellee Industrial Commission to pay temporary total disability compensation from January 25, 1991 forward, pursuant to a C-84 from newly retained physician, Dr. Doreen M. Rioux. L-P conversely moved the commission to "confirm termination" of claimant's temporary total disability compensation.

{¶ 6} A commission district hearing officer awarded temporary total compensation from January 25, 1991 through October 31, 1991 and to continue contingent on medical proof. The hearing officer found L-P's motion moot, since temporary total disability compensation was terminated on December 16, 1990. A regional board of review affirmed.

{¶ 7} At the May 8, 1992 staff hearing that followed, L-P presented evidence of claimant's firing. The staff hearing officers affirmed the prior orders without addressing the issue of claimant's dismissal. Reconsideration was denied.

{¶ 8} L-P filed a complaint in mandamus in the Court of Appeals for Franklin County, claiming that the commission abused its discretion in failing to

2

rule on the question of voluntary employment separation.  The court of appeals denied the writ.

{¶ 9} This cause is now before this court upon an appeal as of right.

_____

*Roetzel & Andress* and *Thomas M. McCarty*, for appellant Louisiana-Pacific Corporation.

*Betty D. Montgomery*, Attorney General, and *William J. McDonald*, Assistant Attorney General, for appellee Industrial Commission.

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A*., *Ronald E. Slipski* and *Steven L. Paulson*, for appellee Longmore.

_____

*Per Curiam*.

{¶ 10} Louisiana-Pacific informed the commission of claimant's dismissal at the May 8, 1992 staff hearing.  The staff hearing officer order that followed did not, however, mention the termination.  In its complaint for a writ of mandamus, L-P claimed that the omission was an abuse of discretion and sought a writ ordering the commission to vacate the May 8, 1992 order.  The appellate court declined, essentially ruling that claimant did not voluntarily abandon his employment.  For the reasons to follow, its judgment is reversed.

{¶ 11} Voluntary departure from employment precludes temporary total disability compensation.  *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 46, 531 N.E.2d 678, 680.  Appellees contend that firing—since it is not employee-initiated—is inherently involuntary and, thus, cannot constitute a voluntary abandonment of employment so as to bar temporary total compensation.  We disagree.

{¶ 12} In *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, we discussed the temporary total disability compensation eligibility of an incarcerated claimant.  We acknowledged that imprisonment would

not fit the traditional definition of "voluntary" since individuals, as a general rule, do not actively seek or consent to incarceration. Looking more deeply, however, we found:

"While the prisoner's incarceration would not normally be considered a 'voluntary' act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act." *Id.*, 34 Ohio St.3d at 44, 517 N.E.2d at 535.

{¶ 13} Recognizing the parallels underlying incarceration and firing, we observed in *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204:

"We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character.* * * "

{¶ 14} Examining the present facts, we find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts—i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 15} L-P's company handbook listed among its dischargeable offenses an "absence [of] more than three (3) consecutive days without notification to your foreman or plant manager." Claimant was released to return to work on December 17, 1990. The record indicates that claimant neither called in nor reported to work on December 17, 18 or 19, 1990.

{¶ 16} Claimant contends that Dr. Turocy extended his return to work date beyond December 17 and then, apparently, forgot to tell his employer. However, there is absolutely no documentation from Dr. Turocy indicating that he extended the claimant's release date, despite claimant's four-year opportunity to obtain such documentation.  To the contrary, the evidence establishes that the claimant was released to return to L-P on December 17, 1990.  Claimant, however, did not return and instead waited until after the new year before making any contact with L-P.

{¶ 17} Accordingly, the judgment of the court of appeals is reversed, and a writ is issued ordering the commission to vacate the May 8, 1992 order and to issue a new order consistent with this opinion.

*Judgment reversed,*
*and writ allowed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT, J., not participating.

––––––––––––––––––