DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} Relator, Valley Interior Systems, Inc., has filed this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order awarding temporary total disability ("TTD") compensation to respondent John F. Wood ("claimant") beginning October 21, 2005, and to enter an order denying *Page 2 
said compensation on grounds that claimant allegedly voluntarily abandoned his employment.
 {¶ 2} The matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A). Relator filed an objection to the magistrate's decision, arguing that the commission abused its discretion in rejecting relator's assertion that claimant voluntarily abandoned his employment.
 {¶ 3} Through its objection, relator essentially reargues an issue presented to the magistrate. However, we agree with the magistrate's conclusion that the staff hearing officer's reliance upon the untimely delivery of relator's May 11, 2005 letter offering claimant a job within his work restrictions supported the commission's rejection of relator's claim that claimant voluntarily abandoned his employment. Accordingly, we overrule relator's objection.
 {¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled; writ denied.
 PETREE and FRENCH, JJ., concur. GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.{PRIVATE} *Page 3 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 5} In this original action, relator, Valley Interior Systems, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent John F. *Page 4 
Wood ("claimant") beginning October 21, 2005, and to enter an order denying said compensation on grounds that claimant allegedly voluntarily abandoned his employment.
Findings of Fact:
 {¶ 6} 1. On September 10, 2004, claimant sustained an industrial injury while employed as a drywall finisher for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "fracture of right elbow," and is assigned claim number 04-861691.
 {¶ 7} 2. On March 4, 2005, claimant underwent an excision of the right radial head. The surgery was performed by Dr. Garg.
 {¶ 8} 3. Following his surgery, claimant returned to light-duty work with relator. Relator's attendance records show that claimant returned to work on Monday, March 28, 2005, following the March 4, 2005 surgery.
 {¶ 9} 4. Claimant was placed into physical therapy from mid-April through June 2005.
 {¶ 10} 5. Relator's attendance records indicate that claimant was generally scheduled to work an eight-hour day Monday through Friday while on light-duty.
 {¶ 11} 6. According to relator's attendance records, during the first week (March 28 through April 1, 2005) that claimant returned to work following surgery, claimant worked eight-hour days Monday through Thursday. However, for Friday, April 1, 2005, the record states: "No show no call."
 {¶ 12} 7. According to relator's records, during the second week following surgery (April 4 through April 8, 2005), claimant worked eight-hour days on Monday, Tuesday, *Page 5 
Thursday and Friday. However, for Wednesday, April 6, 2005, the record states: "Call about 11 AM: vehicle problems."
 {¶ 13} 8. According to relator's records, during the third week following surgery (April 11 through April 15, 2005), claimant worked eight-hour days Monday through Thursday. However, for Friday, April 15, 2005, the record states: "7 PT," apparently indicating that claimant worked only seven hours that day with one hour off for physical therapy.
 {¶ 14} 9. According to relator's records, during the fourth week following surgery (April 18 through April 22, 2005), claimant worked eight-hour days on Monday, Tuesday, Wednesday and Friday. However, for Thursday, April 21, 2005, the record states: "No show, said acid reflux acting up; cancelled PT."
 {¶ 15} 10. According to relator's records, during the fifth week following surgery (April 25 through April 29, 2005), claimant worked eight-hour days on Monday, Tuesday and Wednesday. However, for Thursday April 28, 2005, the record states: "No show at work, did have PT." For Friday, April 29, 2005, the record states: "No show, told case worker did not have gas money."
 {¶ 16} 11. According to relator's records, during the sixth week following surgery (May 2 through May 6, 2005), claimant worked eight-hour days on Tuesday, Wednesday and Thursday. However, for Monday, May 2, 2005, the record states: "Dr appointment (MMI, 3 wks restricted then Full Duty); PT." For Friday, May 6, 2005, the record states: "No show, and cancelled PT."
 {¶ 17} 12. Relator's attendance records beginning Monday, May 9, 2005, state: *Page 6 
 5/9/2005 Monday — Called about 9 AM: van broke had to replace radiator.
 5/10/2005 Tuesday — No show
 5/11/2005 Wednesday — No show; Certified letter sent about reporting to work
 5/12/2005 Thursday —
 5/13/2005 Friday — Certified Letter signed receipt
 5/14/2005 Saturday
 5/15/2005 Sunday
 5/16/2005 Monday — Called around noon
 5/17/2005 Tuesday — Showed up, told he was terminated
 {¶ 18} 13. The record contains a letter from relator to claimant dated May 11, 2005, stating:
 As a follow up to our past discussions, this letter is confirming that we have a position available to you within your work restrictions. Specifically, we have a job that will permit you to perform one handed work, consistent with the restrictions that have been provided by your physician, Dr. Garg. We expect you to be at work on Friday May 13, 2005. Failure to appear at work will be construed as a voluntary abandonment of employment.
 {¶ 19} 14. The record contains a United States Postal Service return receipt for certified mail indicating that claimant received the letter on May 13, 2005.
 {¶ 20} 15. On October 21, 2005, claimant initially was examined by Patricia Southworth, M.D., who wrote:
 * * * He is an alert and oriented male who is in moderate acute distress. His right elbow is very swollen. His wrist is very swollen. He cannot fully straighten the right elbow. He is lacking approximately 5 ° from full extension. The elbow is hypersensitive. His hand is clammy to touch compared to the left hand, which is warm and not clammy. He has a lot of swelling over the right wrist. He has painful and decreased range of motion of the wrist and the elbow. He has decreased strength against resistance in the wrist and the elbow. Any movement of the elbow increases the pain and causes the burning. *Page 7 
 {¶ 21} 16. On a C-84 dated October 21, 2005, Dr. Southworth certified TTD from October 21, 2005 through an estimated return-to-work date of December 31, 2005.
 {¶ 22} 17. On December 1, 2005, Frank Ferguson executed an affidavit stating:
 John Wood called Frank Ferguson (Valley Interior Systems) Safety Director Columbus, Ohio on 5-16-05 Aprox. 12:30 PM. About receiving certified letter concerning his employment with Valley Interior Systems.
 John stated he received a certified letter on 5-14-05 (sat.) directing John to report to work by May 13, 2005. Failure to report to work on Friday May 13, 2005 will be construed as a voluntary abandonment of employment. John stated he had a lot of personel [sic] problems and car trouble as a reason unable to report to work.
 I stated that he had a lot of excuses not to work since he returned to work on restricted duty. John agreed but stated he needed his job.
 NOTE: John as a rule would not call in when he failed to report to work and was reminded many times it is company policy to call the office if you have an unforeseen problem that would make it necessary not to report to scheduled work days.
 John's excessive unexcessed [sic] absenteeism is the reason his employment was terminated.
 {¶ 23} 18. Claimant's request for TTD compensation apparently prompted relator to have claimant examined by Seth H. Vogelstein, D.O., on January 3, 2006. Dr. Vogelstein wrote:
 At this point, Mr. Wood does have some mildly limited range of motion of his right elbow. The right elbow and wrist are not swollen at this time. * * *
 * * *
 At this point, some additional evaluation, in my medical opinion is necessary to rule out underlying pathology that *Page 8 
might be responsible for his continuing pain complaints. It is hard to determine at this point what an appropriate time for MMI would be, but I would recommend that he be re-evaluated in regard to this status in approximately 8-10 weeks.
 In my medical opinion, Mr. Wood could return to work with restrictions. He was working with restrictions back in the spring of 2005, just before he was let go from his previous position.
 There does not appear to have been any significant change to circumstances since he was working back at that point in May of 2005. Any further or continuing restrictions should be based upon additional work up at this point.
 {¶ 24} 19. Following a January 9, 2006 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation beginning October 21, 2005, based upon the reports of Dr. Southworth. The DHO's order further explains:
 The District Hearing Officer finds that the employer has not met its burden of showing that the affirmative defense of voluntary abandonment is applicable to this case. The District Hearing Officer finds that the employer has not met its burden of proving that the elements of the Ohio Supreme Court's [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401] case have been met in this claim. In order for the self-insuring employer's termination of the injured worker from the light duty job the injured worker was performing to rise to the level of a voluntary abandonment of employment under Louisiana Pacific, thereby prohibiting the payment of temporary total disability compensation, the injured worker must have been terminated for violation of a written work rule that clearly defined the prohibited conduct, that the injured worker knew or should have known of, and that the employer previously identified as dischargeable. The employer's policy that says "excessive absenteeism" could lead to discipline or discharge is vague and non-specific. What amounts to "excessive" is subjective and would vary based on an individual's opinion. The injured worker was not put on notice as to what conduct or what absenteeism might *Page 9 
lead to a discharge. The injured worker testified at hearing that he never had a suggestion that he was going to be fired for absenteeism. Typically in a voluntary abandonment absentee termination situation, the employer's policy clearly delineates the standards to be applied, such as a number of days of absences (such as that found in a three day no call no show policy for example) or utilizing a points system regarding tardies, absences or early leaves, none of which has been done here. For these reasons, the District Hearing Officer finds the employer has not shown the injured worker was terminated for clearly defined conduct that the injured worker knew or should have known would result in his termination.
 {¶ 25} 20. The record contains relator's written absentee policy which is contained at page 27 of relator's 40-page company policy:
 * * * Excessive absenteeism or tardiness will not be tolerated and may be grounds for disciplinary action up to and including termination. We recognize there are times when absences and tardiness cannot be avoided. In such cases, you are expected to call the office * * * before 8:00 a.m. (or as soon as possible) so your supervisor can be notified.
 {¶ 26} 21. Relator administratively appealed the DHO's order of January 9, 2006.
 {¶ 27} 22. Following a February 21, 2006 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order of January 9, 2006 is affirmed. The SHO's order further explains:
 The Hearing Officer finds that the Louisiana-Pacific case does not apply in this instance. The Hearing Officer finds that although documentation has been submitted by the employer indicating that the company policy toward excessive absenteeism states (1) excessive absenteeism or tardiness will not be tolerated and may be grounds for disciplinary action up to and including termination. We recognize there are times when absences or tardies cannot be avoided, in such cases you are expected to call so your supervisor can be notified. The employer has submitted documentation which consists of a page 27 of what has been stated as a 40-page company policy document. The claimant at hearing indicated to the employer's representative that he is aware of what the *Page 10 
company policy indicated toward excessive absenteeism. The employer also filed an attendance history which indicates that the claimant had approximately seven to eight no-shows.
 The claimant has submitted a document dated 12/19/2005 from the United States Postal Service indicating that a certified letter was delivered to the claimant on 5/14/2005 [sic]. The claimant's representative has also submitted a 5/11/2005 letter from the claimant's former employer, the instant employer in this claim, indicating that they expected the claimant to be at work on Friday, May 13. Said document showed that the claimant did not receive the certified letter from the employer until one day after he was supposed to show and based on that there was a termination of the claimant's employment with the instant employer. The Hearing Officer finds that the employer has submitted some evidence but not probative evidence that the claimant voluntarily abandoned his position with the instant employer therefore, the Louisiana-Pacific case is not utilized in this instance and the claimant is to be paid temporary total compensation.
 {¶ 28} 23. On March 18, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 21, 2006.
 {¶ 29} 24. On April 22, 2006, the commission mailed an order denying relator's request for reconsideration of the SHO's March 18, 2006 refusal order.
 {¶ 30} 25. On June 23, 2006, relator, Valley Interior Systems, Inc., filed this mandamus action.
Conclusions of Law: {¶ 31} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating: *Page 11 
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with [State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42] and [State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
Id. at 403.
 {¶ 32} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, the court held that the rule or policy supporting an employer's voluntary abandonment claim must be written. The McKnabb court explained:
 Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
 The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.
Id. at 561. (Emphasis sic.)
 {¶ 33} Here, the DHO found that relator's written policy regarding excessive absenteeism was too vague to put the employee on notice as to what conduct or absenteeism might lead to a discharge. According to the DHO's order, claimant testified *Page 12 
at the hearing that "he never had a suggestion that he was going to be fired for absenteeism."
 {¶ 34} In stating that the DHO's order is affirmed, the SHO focuses on relator's letter dated May 11, 2005. The SHO finds, in effect, that claimant did not receive the letter in time to have an opportunity to report for work on Friday, May 13, 2005, as the letter warned. Significantly, relator does not dispute that claimant received the letter on May 13, 2005, as indicated on the return receipt of record, nor does relator claim that the letter was timely delivered.
 {¶ 35} Clearly, relator's letter offering claimant a job that can be performed with one hand undermines relator's claim that claimant was terminated for excessive absenteeism. It is implicit in the job offer that if claimant reports to work on May 13, 2005, as directed, he will not be terminated for past absences.
 {¶ 36} Here, relator claims that the SHO's order "make[s] little sense." (Relator's brief, at 3.) The magistrate disagrees. The SHO's reliance upon the untimely delivery of relator's letter offering claimant a one-handed job clearly supports the commission's rejection of relator's claim of a voluntary abandonment of employment.
 {¶ 37} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
/s/ Kenneth W. Macke
 KENNETH W. MACKE, MAGISTRATE *Page 1