[Cite as *State ex rel. Merritt v. Indus. Comm.* , 2020-Ohio-682.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Christopher T. Merritt, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-234 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 27, 2020

**On brief:** *Nager, Romaine & Schneiberg, Co., L.P.A., Jerald A. Schneiberg,* and *C. Bradley Howenstein,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

**On brief:** *Good & Good LLC,* and *Jonathan A. Good,* for respondent New Avenues to Independence, Inc.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Christopher T. Merritt, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for temporary total disability ("TTD") compensation and to enter an order granting TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and

conclusions of law, which is appended hereto. The magistrate noted it was undisputed that relator was given a copy of the employer's drug-free workplace policy and that relator knew or should have known that testing positive for certain substances would result in discipline up to and including termination. The magistrate also noted it was undisputed that relator tested positive for marijuana and that marijuana is one of the prohibited substances listed in the employer's policy. Given these undisputed facts, the magistrate concluded that (1) the commission did not abuse its discretion in denying relator TTD compensation based upon his voluntary abandonment of his former position of employment due to his termination for violating his employer's written drug-free workplace policy, and (2) the absence of any evidence that relator returned to the workforce in any compacity since his termination. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. Relator argues that the employer's policy manual states that a notice of termination for a positive drug test will list "misconduct" as the reason for the discharge. Because relator's termination notice did not list a reason, and did not state that "misconduct" was the reason for the discharge, there is no evidentiary basis that relator was in fact terminated due to a positive drug test. In turn, relator contends there is no basis for the commission to conclude that relator voluntarily abandoned his employment by violating his employer's written drug-free workplace policy. We disagree.

{¶ 4} There is no dispute that relator was given a copy of the employer's drug-free workplace policy and that relator knew or should have known that testing positive for certain substances, including marijuana, would result in discipline up to and including termination. There is also no dispute that relator tested positive for marijuana use. The commission also points out that relator's termination notice indicates that relator could reapply for employment with the employer in six months, which is an option given to job applicants who have tested positive for drug use. Therefore, even though relator's discharge notice did not list a reason for the discharge, there is some evidence on which the commission could rely to conclude that relator was terminated for testing positive for marijuana use. For these reasons, we overrule relator's objections and find, as did the magistrate, that the commission did not abuse its discretion when it denied relator TTD

compensation based upon his voluntary abandonment of his former position of employment by violating his employer's written drug-free workplace policy.

{¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

SADLER, P.J., and BEATTY BLUNT, J., concur.

———————————————

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Christopher T. Merritt, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  18AP-234 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 15, 2019

*Nager, Romaine & Schneiberg, Co., L.P.A., Jerald A. Schneiberg,* and *C. Bradley Howenstein,* for relator.

*Dave Yost,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

*Good & Good LLC,* and *Jonathan A. Good,* for respondent New Avenues to Independence, Inc.

IN MANDAMUS

{¶ 6}   Relator, Christopher J. Merritt, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation, and order the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 7}   1. Relator sustained a work-related injury on February 1, 2015, and his workers' compensation claim has been allowed for the following conditions:

> Lumbar strain; substantial aggravation of pre-existing L4-5 disc bulge/tear; substantial aggravation of pre-existing L5-S1 disc bulge/tear.

{¶ 8}   2. As part of the treatment for his low back pain, relator was prescribed Norco, an opioid medication.

{¶ 9}   3. As part of the treatment center's policy, patients prescribed controlled opioid medications were routinely tested to insure that they were taking their prescribed medication as instructed.

{¶ 10}  4. On June 23, 2015, relator submitted to a drug screen and tested positive for marijuana metabolites with a THC concentration of 334 ng/ml.

{¶ 11}  5. New Avenues to Independence, Inc. ("NATI") had a drug-free work place policy of which relator was aware.  The policy provides in part:

> **STATEMENT OF POLICY**
>
> NATI, as a result of its mission as a health care provider and status of providing residential care services/supports, has a compelling obligation to eliminate illegal drug use, as well as alcohol, from its workplace. In order to secure workplace safety, to protect its residents/consumers, and the public, NATI herein adopts the following rules concerning substance abuse. These rules are effective immediately and will be enforced uniformly with respect to all employees:
>
> [One] All employees are prohibited from being under the influence of illegal drugs, or alcohol during the working hours.
>
> [Two] The unlawful use, possession, sale, transfer, purchase, dispensation, distribution, or manufacture of any illegal drugs or alcohol is strictly prohibited while employees are on NATI property or while performing NATI business. Any such action by a NATI employee will subject the employee to disciplinary action, including termination. (Reference Personnel Policy #10).
>
> * * *

> We intend to hold all employees accountable in terms of substance use. However, we will support employees who voluntarily identify their substance problems prior to testing. We will offer the second chance agreement on a case by case basis to an employee who tests positive for alcohol and/or other drugs.
>
> Regardless, we will subject employees, who have substance problems but do not come forward and then test positive for drug or alcohol use, to the employment *consequences* stated in the policy.

(Emphasis sic.)

{¶ 12} As above stated, a positive result would subject the employee to disciplinary action up to and including termination.

{¶ 13} 6. NATI's policy also provides protections for its employees and clearly indicates that test results are confidential and not made available except where required by law. Confidentiality of the records is mentioned in several portions of NATI's policy. For example, Nati's policy provides:

> **Protection for employees**
>
> Our program protects employees from dangerous and unproductive behaviors attributable to substance use. It also has built-in protections of employee's rights.
>
> We keep employee records, such as testing results and referrals for help, confidential. We share information on a need-to-know basis only. Violation of confidentiality rights is subject to disciplinary action up to and including *termination* of employment.

(Emphasis sic.)

{¶ 14} Section XI, Records and Confidentiality, provides:

> All referrals and treatment shall be confidential relating to records. The designated agency official (Clinical Director) as determined by the Executive Director will authorize the release of information to designated agency official(s) pertaining to the rehabilitation/treatment chosen by the employee. As a condition of employment the employee will authorize the release of information to designated agency official(s) pertaining to such treatment required by HIPAA.

{¶ 15} Section XVI, Specimen Collection Procedures, provides:

We require confidentiality from our collection sites and labs.

We permit employees to provide urine specimens in private, but subject to strict scrutiny by collection personnel. This avoids any alteration or substitution of the specimen.

Likewise, the collection site will conduct breath alcohol testing in an area that affords the individual privacy. In all cases, there will only be one individual tested at a time.

{¶ 16} Section XX, Storage of Test Results and Right to Review Test, provides:

We will store all records of drug/alcohol separately from the employee's general personnel documents. We will maintain these records under lock and key. We limit access to designated company officials.

We will use the information only to properly administer this Policy and to provide to certifying agencies for review as required by law. We charge designated company officials with access to records with the responsibility for maintaining their confidentiality. Any breach of confidentiality may be an offense resulting in termination of employment.

Any employees tested under this Policy have the right to review and/or receive a copy of their own test results. An employee may request to receive his or her test results by giving the drug-free coordinator a duly notarized Employee Request for Release of Drug Tests Results form. We will use our best efforts to promptly comply with this request. And we will issue to the employee a copy of the results personally or by U.S. Certified Mail, Return Receipt Requested.

{¶ 17} Section XXII, Termination Notices, provides:

In those cases, where substance testing results in the termination of employment, termination notices will list misconduct as the reason. We will deem termination for cause.

{¶ 18} Lastly, Section XXIV, Confidentiality of Test Results, provides:

A. The laboratory may disclose laboratory test results only to the Human Resources staff or Clinical Director via the fax machine. The laboratory will call the Human Resources staff prior to faxing any drug test results to assure that test results

are received directly by one of the above named individuals. <u>The laboratory will send a hard copy of all drug screen test results</u>. Via the U.S. mail, to the []attention Human Resources Confidential and Personal.[] Any positive result which the Clinical Director or designee justifies by acceptable and appropriate medical or scientific documentation to account for the result as other than the unlawful use of a drug, harmful intoxicant or use/possession of alcohol while on duty/NATI property will be treated as a negative test result and may not be released for purposes of identifying illegal drug use. Test results will be protected under the provisions of the Privacy Act, 5 U.S.C. {522, <u>et seq</u>., and Section 503 (e) of the Act, and may not be released in violation of either Act. Only those records necessary for compliance with this Plan may be maintained. Upon receiving the hard copy via the U.S. mail, faxed copy will be maintained in the staff's medical file. It is a positive test result, which has been confirmed and verified through prescription verification with the assistance and cooperation of the Clinical Director or designee, the hard copy and justification will be placed in a sealed envelope marked []Confidential Drug Screen[] in the medical file. Any records of the Clinical Director or designee, including drug test results, may be released to the Executive Director, the Manager, or Human Resources for the purposes of auditing the activities of the Clinical Director or designee, except that the disclosure of the results of any audit may include personally identifying information of any employee. NATI Board of Directors or [its] respective committees may have access to drug test results if necessitated by grievance/appeals, abuse/neglect investigations or litigations.

(Emphasis sic.)

{¶ 19} 7. Relator was terminated effective August 24, 2015. The Employee Status Change form indicates that relator was discharged but does not indicate a reason for the discharge.

{¶ 20} 8. Relator filed a request for TTD compensation beginning August 19, 2015 and continuing.

{¶ 21} 9. Relator's request for TTD compensation was heard before a district hearing officer ("DHO") on September 20, 2016. The DHO granted the motion based on the medical evidence submitted by relator.

{¶ 22} 10. NATI filed an appeal and the matter was heard before a staff hearing officer ("SHO") on December 1, 2016. Based on the evidence of relator's termination, the SHO vacated the prior DHO order and denied relator's request for TTD compensation finding that he had been terminated for violation of a written work rule of which he had knowledge that such violation would result in his termination. Specifically, the SHO order provides:

> It is the order of the Staff Hearing Officer that the Injured Worker's C-86 Motion, filed 07/18/2016, is denied.
>
> The Staff Hearing Officer denies temporary total disability compensation from 08/19/2015 through the date of hearing, as not substantiated by the evidence on file.
>
> The Staff Hearing Officer finds Injured Worker was terminated on 08/24/2015 for violation of the Employer's drug-free workplace policy after testing positive for marijuana from his random drug screen on 08/12/2015.
>
> The Staff Hearing Officer finds, as Injured Worker was terminated for violation of a written work rule for which Injured Worker had knowledge that violation of same would result in termination, that Injured Worker voluntarily abandoned his employment, as of the date of his termination on 08/24/2015.
>
> The Staff Hearing Officer additionally finds no evidence that Injured Worker has returned to the workforce in any capacity since his termination on 08/24/2015.
>
> The Staff Hearing Officer, accordingly, finds that the requested temporary total disability compensation from 08/19/2015 through the present is denied. Any overpayment which occurs as a result of this order is declared such, and is to be recouped pursuant to R.C. 4123.511 (K).

{¶ 23} 11. Relator's appeal was refused by order of the commission mailed December 29, 2016.

{¶ 24} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 25} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 26} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 27} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 28} This case must be considered within the historical context in which the voluntary abandonment doctrine has developed. In *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985), Ernesto Rosado sustained a work-related injury. At some point in time, Rosado voluntarily retired from his job with Jones & Laughlin. Based on Rosado's voluntary retirement, Jones & Laughlin argued in this court that Rosado should not be entitled to an award of TTD compensation. Because Jones & Laughlin had failed to raise the issue before the commission, this court denied Jones & Laughlin's request for a writ of mandamus ordering the commission to vacate its award of TTD compensation; however, this court did address the issue of whether or not an employee's voluntary retirement from the workforce for reasons unrelated to an industrial injury precludes the payment of TTD compensation.

{¶ 29} After citing the syllabus rule of *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982), this court stated:

> [T]he industrial injury must not only be such as to render the claimant unable to perform the functions of his former position of employment, but it also must prevent him from returning to that position.

*Jones & Laughlin* at 147. Thereafter, this court set forth the issue before it:

> Accordingly, the issue before us is whether a person who has voluntarily taken himself out of the work force and abandoned any future employment by voluntarily retiring is prevented from returning to his former position of employment by an industrial injury which renders him unable to perform the duties of such former position. This raises an issue of causal relationship.

*Id.* Ultimately, this court concluded as follows:

> [O]ne who has voluntarily retired and has no intention of ever returning to his former position of employment is not prevented from returning to that former position by an industrial injury which renders him unable to perform the duties of such former position of employment. A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position, as well as voluntary retirement.

*Id.*

{¶ 30} It was not until *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987), that the foundation for the voluntary abandonment doctrine as we know it today began to take shape. In that case, Nelson C. Ashcraft was injured while working in the scope of his employment as a welder and received TTD compensation for a period of time. After his TTD compensation ceased, Ashcraft was incarcerated in West Virginia on a

felony charge, subsequently convicted and imprisoned for first degree murder. Thereafter, Ashcraft sought TTD compensation from the commission.

{¶ 31} The commission ordered Ashcraft's motion suspended until he was released from incarceration. As such, Ashcraft was precluded from receiving any TTD compensation while incarcerated.

{¶ 32} Ashcraft filed a mandamus action in this court seeking an order compelling the commission to hear the application for TTD compensation. This court granted the writ and the matter was appealed to the Supreme Court of Ohio.

{¶ 33} After considering the purpose of TTD compensation and considering the holding from *Jones & Laughlin,* the *Ashcraft* court, at 44, reiterated that the crux of the decision in *Jones & Laughlin* was:

> The crux of this decision was the court's recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals.

{¶ 34} The *Ashcraft* court concluded that when a claimant has voluntarily removed himself or herself from the workforce, he or she no longer suffers a loss of earnings because he or she is no longer in a position to return to work. The court concluded that this logic would apply whether the claimant's abandonment of his position was temporary or permanent. Ultimately, the court concluded that Ashcraft's incarceration constituted a factor which, independently of his previously recognized work-related injury, precluded his receipt of TTD compensation. In so finding, the *Ashcraft* court stated, at 44:

> While a prisoner's incarceration would not normally be considered a "voluntary" act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act.

{¶ 35} In *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988), the court again considered whether or not retirement should preclude the payment of TTD compensation. In that case, Rollin Sharp sustained a low back injury in the course of his employment with Rockwell International.  TTD compensation was paid until such time as Sharp was released to return to light-duty work. Ultimately, Sharp retired from his employment but, thereafter, filed an application to reactivate his claim and requested TTD compensation. Rockwell International argued that TTD compensation should not be paid to Sharp because he had voluntarily retired from his employment.

{¶ 36} Ultimately, the Supreme Court found that TTD compensation was payable based on the commission's finding that Sharp's retirement was causally related to his industrial injury and, thus, was not voluntary.  Specifically, the *Rockwell* court stated, at 46:

> Neither *Ashcraft* nor *Jones & Laughlin* states that *any* abandonment of employment precludes payment of temporary total disability compensation; they provide that only voluntary abandonment precludes it. While a distinction between voluntary and involuntary abandonment was contemplated, the terms until today have remained undefined. We find that a proper analysis must look beyond the mere volitional nature of a claimant's departure. The analysis must also consider the reason underlying the claimant's decision to retire. We hold that where a claimant's retirement is causally related to his injury, the retirement is not "voluntary" so as to preclude eligibility for temporary total disability compensation.

(Emphasis sic.)

{¶ 37} In 1995, the Supreme Court decided the seminal case of *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401 (1995).  In that case, Patrick Longmore sustained an injury while in the course of his employment with Louisiana-Pacific Corporation, a self-insured employer under Ohio's workers' compensation laws, who began paying TTD compensation. Longmore was released to return to work on December 17, 1990; however, he did not report to work nor did he call in on December 17, 18, or 19, 1990.  In a letter dated December 20, 1990, Louisiana-Pacific notified Longmore

that his failure to report to work for three consecutive days violated the company's policy and he was terminated.

{¶ 38} The commission awarded Longmore TTD compensation and this court denied Louisiana-Pacific's request for a writ of mandamus.

{¶ 39} On appeal, the Supreme Court granted the writ of mandamus after finding that Longmore's termination did bar his receipt of TTD compensation. Specifically, the *Louisiana-Pacific* court stated, at 403:

> Recognizing the parallels underlying incarceration and firing, we observed in *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204:
>
> "We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *"
>
> Examining the present facts, we find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with *Ashcraft* and *Watts*—i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 40} Here, it is undisputed that relator was given a copy of NATI's drug-free workplace policy. As such, relator knew or should have known that testing positive to certain substances would result in discipline up to and including termination. Further, it is undisputed that relator tested positive for marijuana and that he did not come forward and report prior to testing. Marijuana is one of the substances listed in NATI's policy.

{¶ 41} In arguing the commission abused its discretion, relator first asserts there is no evidence that he was actually terminated because he tested positive for marijuana. Relator points to Section XXII of the policy, which provides:

> In those cases, where substance testing results in the termination of employment, termination notices will list

misconduct as the reason. We will deem termination for cause.

{¶ 42} A review of the termination form itself indicates that no reason is given for the discharge. In fact, there is no space on the form where a specific reason for termination can be provided other than the checking of specific boxes. Failing a drug test is not a reason listed on the termination form. Relator asserts that, because NATI did not list "misconduct" as the reason for which he was discharged, it is unclear that he was actually discharged because he tested positive for marijuana.

{¶ 43} As indicated in the findings of fact, NATI has gone to great lengths to ensure the privacy of its employees. NATI's drug-free workplace policy provides numerous expressed provisions to protect the privacy of any of its employees or applicants for employment who test positive for certain substances. NATI's policy makes it clear the positive drug results would not become a part of relator's personnel file and that his positive test result would not be disclosed unless disclosure was required by law. As such, it is clear that NATI would never list a positive drug test as a reason for discharging an employee so that information would not be disclosed unless required. Here, it is clear that the reason NATI indicated that "misconduct" would be listed as the reason for termination was to protect employees, including relator, from inappropriate disclosure of this information to anyone else. The magistrate does not find relator's argument that the word "misconduct" must be listed on the discharge form in order to substantiate that his termination was actually due to his having tested positive for marijuana. The magistrate simply finds that relator's argument lacks merit.

{¶ 44} Relator next challenges the commission's order asserting the commission had no basis on which to find that relator had abandoned the entire labor market. Counsel for relator indicates that because relator was not present at the hearing, the commission could not have taken testimony from relator as to his efforts to secure other employment. For the reasons that follow, this argument fails as well.

{¶ 45} The magistrate finds the commission did not make any finding that relator had voluntarily abandoned the entire workforce. Instead, after finding that relator had voluntarily abandoned his former position of employment after testing positive for

marijuana, the SHO found there was "no evidence that [relator] has returned to the workforce in any capacity since his termination on 08/24/2015."

{¶ 46} Based on the evidence or lack of evidence in the record, this finding is accurate. TTD compensation is designed to compensate an injured worker for lost wages where the allowed condition in the claim has precluded a return to the workforce. Having concluded that relator voluntarily abandoned his employment with NATI on August 24, 2015, the commission could not award relator TTD compensation unless relator presented evidence that he had returned to some employment and, as a result of the allowed conditions in his claim, was now unable to work. Having failed to present that evidence, relator did not meet his burden of proving that he was entitled to TTD compensation.

{¶ 47} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it denied his request for TTD compensation, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).